

**ORDERED in the Southern District of Florida on October 25, 2011.**

_____
A. Jay Cristol, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
www.flsb.uscourts.gov**

| | |
|---|---|
| In re: | Case No. 09-16850-BKC-AJC |
| ALEJANDRO ANTONINI, | Chapter 7 Case |
| Debtor. _____/ | |
| FRANKLIN D. DURAN, | Adv. No. 10-3792-BKC-AJC-A |
| Plaintiff, vs. | |
| ALEJANDRO ANTONINI, | |
| Defendant. _____/ | |

**ORDER DENYING DEFENDANT'S *ORE TENUS* MOTION
FOR JUDGMENT ON PARTIAL FINDINGS**

THIS MATTER came before the Court on October 3, 2011 upon the Defendant's *Ore Tenus Motion for Judgment on Partial Findings Pursuant to Fed. R. Civ. P. 52(c)* (the "Motion"), made applicable to these proceedings by Fed. R Bankr. P 7052. Pursuant to the

3979182-1

Motion, the Defendant contends that Duran[1] "failed to establish nondischargeable debt." *See Transcript* p. 217:9-11[2]. The Court will deny the Motion, because as more fully explained below: (a) the evidence supports the claims made in the Complaint, (b) the law recognizes that if an involuntary petition is commenced in bad faith the debt arising from the bad faith filing is non-dischargeable, and (c) the Court may decline to render any judgment until the close of all the evidence.

### I. Federal Rule of Civil Procedure 52(c)

Fed. R. Civ. P. 52(c) ("Rule 52(c)") provides:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

Rule 52(c) authorizes the court to enter judgment at any time it can appropriately make a dispositive finding of fact on the evidence. *Martinez v. United States Sugar Corp.*, 880 F. Supp. 773, 775 (M.D. Fla. 1995). Alternatively, the Court may decline to make any ruling and determine to hear the remaining evidence before rendering a complete decision. *New Buffalo Sav. Bank v. McClung (In re McClung)*, 335 B.R. 466, 472 (Bankr. M.D. Fla. 2005). Based upon the evidence adduced thus far, the facts establish grounds sufficient to support denial of the Motion.

---

[1] . Capitalized terms used in this Order and not otherwise defined herein shall have the meanings ascribed to such terms in the Complaint [D.E. 1].

[2] Unless otherwise noted all citations to "Transcript" are to the proceedings held before this Court on October 3, 2011.

## II. The Standard Under §523(a)(6)

In *Thomas v. Loveless (In re Thomas),* 288 Fed. Appx. 547, 549 (11th Cir. 2008), the Eleventh Circuit affirmed the bankruptcy court's determination that a civil judgment for "malicious prosecution" was exempted from discharge under 11 U.S.C. §523(a)(6). The *Thomas* Court explained that there are two elements under §523(a)(6) that must be satisfied to except a debt from discharge. The first requirement, that the injury be "willful", is met if the debtor "commits an intentional act the purpose of which is to cause injury *or which is substantially certain to cause injury*." *Thomas* at 549 (emphasis added). The second requirement, "malice", "can be implied when a debtor commits an act that is *wrongful and without just cause or excessive* even in the absence of personal hatred, spite or ill-will." (Emphasis added).

Recently, Judge Kimball of this district has issued two opinions addressing the standard that a court in the Eleventh Circuit should apply to determine if a debt should be non-dischargeable under §523(a)(6). In one of the cases, *Drewes v. Levin (In re Levin)*, 434 B.R. 910, (Bankr. S.D. Fla. 2010), Judge Kimball explained that to meet the "willful" requirement under §523(a)(6) a plaintiff is required to show either: (a) the defendant "subjectively intended the harm that resulted" or (b) the defendant "acted intentionally and the act in question was certain or substantially certain to result in the injury." *Drewes v. Levin (In re Levin)*, 434 B.R. 910, 918-19 (Bankr S.D. Fla. 2010); *See also Stewart Tilghman Fox & Bianchi, P.A., v Kane (In re Kane)*, 2011 Bankr. LEXIS 175 (Bankr. S.D. Fla. Jan. 18, 2011).

The evidence elicited shows: (1) the debtor acted intentionally; (2) the act was substantially certain to cause Duran injury; and (3) the act was wrongful and without just cause, or was excessive.

3979182-1

### III. Evidence Established Antonini Acted Intentionally

The evidence established thus far in the proceedings supports the allegations that Antonini acted intentionally. He admitted to filing the involuntary bankruptcy against Duran and that he signed the petition both in his individual capacity and in his corporate capacity on behalf of Venuz Supply Inc. ("Venuz Supply") *Transcript* p. 17:2-21; Plaintiff's Exhibit 1. Antonini also admitted that he filed the involuntary petition against Duran to collect the debt that Duran allegedly owed him and Venuz Supply. *See e.g., Transcript* p. 25:5-9. Antonini knowingly and intentionally filed the involuntary petition against Duran.

### IV. Antonini Knew or Should Have Known Filing of the Involuntary Petition was Substantially Certain to Cause Duran Injury

Justice Bradley long ago aptly recognized that "The power to throw a man into bankruptcy and thus destroy his business, and all hope for the future, is one of great magnitude to be given to one man over another." *Stewart v. Sonneborn*, 98 U.S. 187, 201 (1878)(J. Bradley dissenting); *accord Norin v. Scheldt Manufacturing Co*., 297 ILL 521, 525-26 (Ill. 1921)("[a] petition in bankruptcy is *sui generis* and is most far-reaching and drastic in its effects."); *Wilkinson v. Goofellow-Brooks Shoe Co.*, 141 F. 218, 219-220 (E.D. Miss. 1905)("a bankruptcy proceeding cannot be said to be an ordinary civil suit. It is *sui generis*, and it is far reaching and drastic in its effects. Whether accompanied by actual seizure of the bankrupt's property or not, it places an embargo on his right to dispose of his property and of his business generally.").

More recently, the Seventh Circuit recognized "the filing of an involuntary petition is ***an extreme remedy*** with serious consequences to the alleged debtor, such as loss of credit standing, inability to transfer assets and carry on business affairs, and public embarrassment." *In re Reid*, 773 F.2d 945, 946 (7th Cir.1985)(emphasis added); *see also In re Dino's*, 183 B.R. 779, 783-84

(S.D. Ohio 1995) ("the danger of involuntary bankruptcy cannot be overlooked by the courts; an ***involuntary petition is a charge that ought not be made lightly***"); *accord In re SBA Factors of Miami, Inc.*, 13 B.R. 99, 101 (Bankr. S.D. Fla. 1981).

This sentiment has been echoed by decisions in this district. In *In re E.S. Prof'l Servs.*, U.S. Bankruptcy Judge Utschig, sitting by designation in the Southern District of Florida, noted that the "goal or purpose of an involuntary bankruptcy should be the equal distribution of assets among creditors. Involuntary bankruptcy is an extreme remedy with dire consequences upon a[n alleged debtor]." *In re E.S. Prof'l Servs.*, 335 B.R. 221, 226 (Bankr. S.D. Fla. 2005)(J. Utschig). The court also explained that the remedy of an involuntary bankruptcy "was not intended to redress the special grievances, no matter how legitimate, of particular creditors of a business otherwise holding its own. . . . Petitioning Creditors must seek redress under state law, in the state courts and not in the bankruptcy court." *Id*.

It was a substantial certainty that Duran would suffer losses and/or harm as a result of Antonini's intentional decision to file an involuntary bankruptcy against Duran. Antonini knew or should have known that, at a minimum, Duran would incur costs and expenses in the defense of the involuntary petition. Antonini further sought the appointment of an interim trustee for Duran's estate, an extraordinary remedy. For Duran, the evidence indicates the involuntary bankruptcy and the motion to appoint an interim trustee appear to have affected his reputation as a businessman and affected the ability of his companies to continue functioning. *See Transcript* p. 161:23-25; 162:1-9; 182:1-5; *see also* Plaintiff's Exhibit 5. This is in addition to the fees that he had to expend to defend the involuntary petition. *See Transcript* p. 161:11-12. Accordingly, there is sufficient evidence for the Court to conclude that Antonini's intentional filing of the involuntary was substantially certain to cause Duran injury.

## V. Evidence Established Antonini Commenced the Involuntary in Bad Faith

To prevail on his 11 U.S.C. §523(a)(6) claim, Duran must show that Antonini's commencement of the involuntary bankruptcy was **either** "wrongful and without just cause, or was excessive." *In re Thomas*, *supra.* The evidence established that on November 21, 2008 Antonini and Venuz Supply sued Duran in federal district court to collect the debts they allege Duran owed. *See* Plaintiff's Exhibit 2 and 4. The evidence also establishes that Antonini, before Duran's deadline to respond to the complaint, filed the involuntary against Duran on behalf of himself and Venus Supply. On the same day that Antonini filed the involuntary petition against Duran, he swore out an affidavit attesting to the fact that Duran had a net worth of $100 million. He also admitted that he did nothing to determine if Duran was otherwise paying his debts as they became due, and did nothing to determine if anyone else was suing Duran on account of an unpaid debt.

The filing of an involuntary petition is an "extreme" remedy. *See In re Reid*, *supra; Soc'y of Lloyd's v. Harmsen (In re Harmsen)*, 320 B.R. 188, 202 (BAP 10th Cir. 2005)("an involuntary bankruptcy case is extreme in nature and carries with it serious consequences for the alleged debtor, such as a loss of credit standing, interference with its general business affairs, and public embarrassment."). For Antonini to exercise this remedy in the face of (a) undertaking no reasonable diligence regarding Duran's financial condition prior to the filing of the involuntary, (b) pending litigation between the parties, and (c) his own sworn statement regarding Duran's substantial net worth, demonstrates that Antonini's commencement of the involuntary case against Duran was without just cause and excessive .

Notwithstanding, the excessiveness of Antonini's intentional action of filing the involuntary bankruptcy; Duran has also established that the involuntary petition was wrongful and without just cause because it was filed in bad faith. *See* Section V, *infra*.

The Bankruptcy Code does not define the term "bad faith". *In re Apache Trading Group*, 229 B.R. 891, 892-93 (Bankr. S.D. Fla.1999). In the context of an involuntary bankruptcy filing, this Court has recognized five different tests to establish bad faith on the part of the petitioning creditor(s): (1) the subjective test; (2) the improper purpose test; (3) the objective test; (4) the improper use test; and (5) the combined test, which is also called the Rule 9011 test. A sixth test, called "the nose test" has also been proposed by some courts. *In re Apache Trading Group*, 229 B.R at 893.

The Eleventh Circuit has recognized three such tests: (1) the "improper purpose test"; (2) the "improper use test"; and (3) the Rule 9011 test. *Gen. Trading Inc., v. Yale Materials Handling Corp*., 119 F.3d 1485, 1501-02 (11th Cir. 1997). There is no requirement that all of the above mentioned tests be employed to establish that a petition was filed in bad faith. In fact, courts have imposed damages when only one of the five tests has been proven. *See e.g In re K.P. Enterprise*, 135 B.R. 174, 180 (Bankr. D. Maine 1992); *Gen. Trading Inc. v. Yale Materials Handling Corp*., 119 F.3d at 1502. Other courts have employed a "totality of the circumstances" approach, which incorporates the factors of each test. *In re Apache Trading Group*, 229 B.R at 893. *See also In re Oakley Custom Homes*, 168 B.R. 232 (Bankr. D.Colo. 1994) (involuntary petition was the product of a business war and personal vendetta carried on by petitioners, leading to the inescapable conclusion that the petitioners used the bankruptcy option in an improper and unacceptable way.)

On September 1, 2011, this Court denied the Defendant's Motion to Dismiss Count V of the complaint for failure to plead sufficient facts to maintain a cause of action under §523(a)(6). *See Order Denying Motion to Dismiss/Strike* [D.E. 89] at p. 8. In support of the ruling, the Court stated "paragraph 26, lists the factual basis for the Defendant's bad faith in initiating the involuntary bankruptcy against Duran." At the trial, Duran introduced specific and compelling evidence in support of the allegations in paragraph 26 of the Complaint.

In support of paragraph 26(a), Duran presented and the Court accepted:

(a) Plaintiff's Exhibit 3, Antonini's sworn statement signed on the ***same*** day as the involuntary wherein Antonini swears that "Duran, meanwhile, ***who has a net worth in excess of $100 million***, can well afford to prosecute a baseless lawsuit such as this." Plaintiff's Exhibit 3 at P.11(emphasis added);

(b) Antonini's trial testimony that he knew at the time of the filing of the involuntary that Duran had a net worth of $100 million. *Transcript* p. 27-29;

(c) Antonini's testimony that Duran "responded saying that he didn't owe me, sir." *Transcript* p. *34*: 24-25;

(d) On November 21, 2008, Antonini commenced a federal court lawsuit [Plaintiff's Exhibit 2] purportedly seeking to collect the same debts that formed the basis of the involuntary bankruptcy. However, Antonini filed the involuntary less than 21 days after the filing of the federal court lawsuit, which was before Duran's deadline to respond to the complaint. *See* Plaintiff's Exhibit 1, 2, and 4; *See also* Fed. R. Civ. P. 12(a)(permitting a defendant 21 days to file a responsive pleading after service); *Transcript* p. 36:6-9;

(e) Antonini's federal court complaint, filed before the involuntary, alleges that Duran's business entities are Duran's alter egos. *Plaintiff's Exhibit 2* at p. 4;

(f) Not a single other creditor joined the involuntary against Duran. *Transcript* 25:1-4;

(g) The filing of the involuntary bankruptcy by Antonini on December 5, 2008, was not done with the "goal or purpose of … the equal distribution of assets among creditors". Indeed by his own admission, Antonini filed the involuntary because "it was the ***best***—it was the only way I had to, trying to get my money." *Transcript* p. 26:14-15(emphasis). In fact, Antonini admitted that the reason he commenced the involuntary petition against Duran was so he could "collect the money" that was allegedly owed by Mr. Duran to Antonini and Venuz. *Transcript* p.25:5-9; and

(g) Antonini's prior testimony at his deposition, was inconsistent with the testimony he provided at trial and impeaches his credibility, suggests that he never did any due diligence prior to filing the involuntary. *Transcript* p.20:16-25, P.22:12-20; P.23:8-16. Indeed, the testimony supports an inference that Antonini, never checked to see if Duran was not ***generally*** paying his debts as they came due.

The foregoing evidence is sufficient to support a conclusion that Antonini filed the involuntary petition against Duran in bad faith.

### VI.  Damages from Bad Faith Filing can be Non-Dischargeable Pursuant to 11 U.S.C.§523(a)(6)

On September 1, 2011 the Court denied the Defendant's Motion to Dismiss/Strike [D.E. 89] (the "Order"). The Order cites to several cases that have been decided post *Kawaauhau v.*

*Geiger*, wherein damages arising from litigation commenced in bad faith are exempted from discharge. *See Order* p. 6-8; *In re Mansel*, 2001 Bankr. LEXIS 877, 2001 WL 832358, at *8 (Bankr. N.D. Ill. July 19, 2001)("willfulness, under the *Geiger* standard, has been found where a Debtor filed a lawsuit without having a factual basis for the claim and thereby caused another to incur substantial attorney's fees in defending himself."); *Erie Ins. Group v. Chaires (In re Chaires)*, 249 B.R. 101, 108 (Bankr. D. Md. 2000) ("sanctions based on a finding of bad faith are nondischargeable under 11 U.S.C. § 523(a)(6), consistent with the holding of courts of other jurisdictions examining the issue post-*Geiger*"); *Luca v. Luca (In re Luca)*, 422 B.R. 772 (Bankr. M.D. Fla. 2010)(finding that where a state court had determined that an appeal by the debtor was frivolous and awarded attorney's fees to the plaintiff, that award was sufficient to defeat a motion to dismiss a §523(a)(6) claim); *Diamond v. Kolcum (In re Diamond)*, 285 F.3d 822, 829 (9th Cir. 2002) (state court jury finding that the debtor "intentionally caused injury" to the creditor "without just cause" was entitled to preclusive effect for purposes of section 523(a)(6)."); *Hughes v. Arnold et al., (In re Hughes)*, 393 B.R. 712 (E.D. Ca. 2008)(affirming the bankruptcy court's ruling that a state court judgment awarding attorneys' fees and costs relating to an improper sexual harassment action was non-dischargeable under section 523(a)(6)). These cases all support the proposition that the commencement of litigation in bad faith can be a sufficient basis for a finding of non-dischargeability of any debt relating to the bad faith or improper litigation.

In *Multiut Corp. v. Draiman*, 2006 Bankr. LEXIS 3564 (Bankr. N.D. Ill. Dec. 22, 2006), the court held that damages awarded to the alleged debtors from a bad faith involuntary filing were non-dischargeable under 11 U.S.C. §523(a)(6) in the petitioning creditor's subsequent voluntary case. In reaching its conclusion that the 303(i) damages were exempt from discharge,

3979182-1

the court specifically noted that "the petitioning creditors' acts constituted an abuse of the bankruptcy process." *Id* at 21.

In *Sjostedt v. Salmon (In re Salmon)*, 128 B.R. 313 (Bankr. M.D. Fla. 1991), the bankruptcy court held that the damages awarded pursuant to section 303(i) for the commencement of an improper involuntary are nondischargeable:

> "if the Court finds a creditor filed an involuntary petition in bad faith, the Court may grant judgment against the creditor for punitive damages. Title 11 U.S.C. § 303(i)(2)(B). These punitive damages are determined to be nondischargeable pursuant to Title 11 U.S.C. § 523(a)(6)."

This Court has specifically found both of these cases to be persuasive. According to the cases cited herein, if the involuntary against Duran was commenced in bad faith then Duran is entitled to have the 303(i) damages exempt from discharge. At this stage of the trial, Duran has elicited evidence that the involuntary petition against him was commenced in bad faith and therefore the Defendant's Motion is denied.

Duran introduced sufficient evidence to support a finding in his favor on Count V of the complaint. Moreover, the law on § 523(a)(6) claims demonstrates that it is possible for a plaintiff like Duran to produce sufficient evidence to meet his burden. Having found that Duran has adduced sufficient evidence to support a finding in his favor, it would be inappropriate for the Court at this time to grant the Defendant's Motion. Accordingly, for the foregoing reasons it is

ORDERED AND ADJUDGED that the Motion is **DENIED**.

###

Copies furnished to:
Jordi Guso, Esq.
James Miller, Esq.
Plaintiff
Defendant

3979182-1